R. W. HORINE and BEN HORINE, Appellants, v. PEOPLES SEWER COMPANY and CITY SEWER COMPANY, Respondents.

Springfield Court of Appeals, June 25, 1918.

1. **MUNICIPAL CORPORATIONS:** Sewage Disposal: Nuisance: Right to Injunction.  Property owners, damaged by discharge of sewage in close proximity to their land, and overflowing thereon, had adequate remedy at law by suit for damages, and, in view of probably material injury to entire population of city, could not have such disposal of sewage restrained.

2. **COURTS:** Jurisdiction: Missouri Appellate Courts.  Where property owners sued to restrain disposal of sewage and the sewer company claimed prescriptive right to discharge of sewage, but irrespective of limitations plaintiffs were not entitled to injunction, their remedy at law being adequate, the issue of title was not involved.

Appeal from Lawrence County Circuit Court. —*Hon. C. L. Henson,* Judge.

AFFIRMED.

*George Pepperdine* and *H. H. Bloss* for appellants.

. *John L & Carr McNatt* for respondents.

BRADLEY, J.—Plaintiffs filed their bill in equity to enjoin defendants from discharging sewage upon the land of plaintiffs, and so near the same as to affect the value thereof, and to render said land unfit

for use by reason of foul and offensive odors. The answer is a general denial, a plea of the statute of limitations, and a plea in the nature of estoppel. The trial court denied the relief prayed for, and plaintiffs appealed.

In 1891 the defendant, City Sewer Company, was established by ordinance of the city of Aurora; and the defendant, Peoples Sewer Company, was likewise established in 1896. The Peoples Sewer Company at the time of its establishment laid its sewer pipe across the land now owned by plaintiffs, and placed its discharge where it now is, without any express consent of the then owner, and without condemnation proceedings. The City Sewer Company at the time it was established laid its sewer not on the land of plaintiffs, but the discharge is above and near said lands. Chat river, a small stream or creek, flows through the city of Aurora, and through plaintiffs' land, and into this river both sewers discharge. The sewage passes through plaintiffs' land, but no proceedings were had by either defendant to condemn this stream through plaintiffs' land as an outlet for said sewers. The land alleged to be damaged consists of twelve acres, triangular in shape, and situate between the Frisco and Missouri Pacific railroad tracks, and is within the corporate limits of the city, but is not platted. Independent of the sewer discharge the land is not suitable for residence, but is used for agricultural purposes. Above plaintiffs' land are a number of mines the discharge from which is into Chat river, and this discharge, the trial court found contributed to the contamination of the stream, and consequently to the injuries complained of. It was also found by the trial court that before the construction of the sewers the waters of Chat river were unfit for use. The sewer discharge from the Peoples Sewer Company by backing up and failing to flow away during dry times when the river is low or dry has spread over a considerable area, two or three acres, and rendered, so it is claimed,

these two or three acres, wholly worthless, and it is claimed that the stench is so offensive that it is quite difficult to cultivate any portion of the twelve acres.

The learned chancellor below based his finding and decree denying the injunction on the ground that plaintiffs' damage was so out of proportion to the injury and calamity that would likely befall the city if the discharge was abated that equitable relief should not be granted, and also on the ground that the plaintiffs had depressed the consideration because of the sewer discharge when they purchased in 1916.

It has been suggested that we have no jurisdiction, and that this cause be transferred to the Supreme Court. This suggestion is based on the idea that the title to the land is involved by reason of the defendants' plea of title by prescription. Defendant, City Sewer Company, claims to have acquired by prescription the title, and therefore, the right to maintain its sewer and discharge on plaintiffs' land, and likewise the Peoples Sewer Company claims the right to have its discharge near plaintiffs' land; and both defendants claim by prescription the right to use Chat river through plaintiffs' land as an outlet to carry away the sewage discharged therein. City of Moberly v. Lotter, 266 Mo. 457, 181 S. W. 991, is clearly in point as to the title being involved if it be conceded that plaintiff is entitled to an injunction unless barred by the statute. That case was in condemnation to condemn certain lands of defendant for sewer purposes, and on the question of the title being involved the court said, l. c. 464: "A cursory view may lead to the conclusion that in this class of cases only the easement and not the fee is affected; but while the fee remains in the owners, their right to the use and exclusive possession of the lands is either lessened or taken away, and as a consequence the title is affected to the extent of the injury inflicted. A condemnation of lands for a public sewer may not, after the work is completed, affect the owner's interest there-

in to the same extent as in the class of cases mentioned, but the injury is of a like character, differing only in degree and sufficiently interferes with the owner's proprietary rights to authorize the holding that the title to the land is involved."

Defendants, had they proceeded by condemnation, could have acquired no more than they claim by prescription. In the one case the right to use the land now owned by plaintiffs for sewer purposes would be acquired in the manner usually followed—condemnation; and in the other by appropriation. If plaintiffs are not entitled to injunctive relief independent of the Statute of Limitation, then the question of title is not involved; and it is our conclusion that if plaintiffs have any cause of action there is an adequate remedy at law for all damages they may have sustained, and they are not, therefore, entitled to any relief in equity.

Smith v. Sedalia, 244 Mo. 107, 149 S. W. 597, was an action for damages for the wrongful pollution of a water course through plaintiffs' land by a sewer discharge, and a count in equity praying that defendant be enjoined from discharging its sewage so that said sewage would be carried into and upon the premises of plaintiff. In speaking of the injunctive relief prayed for the court on page 125 said: "For still another reason there can be no injunction in this case. The writ of injunction is an extraordinary remedy. It does not issue as of course, but somewhat at the discretion of the chancellor. It is his duty to consider its effect upon all parties in interest and to issue it only in case it is necessary to protect a substantial right, and even then not against great public interests. An apt discussion and application of this doctrine are contained in the opinion of LAMM, P. J., in Johnson v. Railroad, 227 Mo. l. c. 450. Surely no chancellor would enjoin the further operation of this large and costly sewer system, with the attendant danger to public health and convenience, when it clearly appears that any injury caused to plaintiff by the sewer can be fully compensated by a pending action at law."

The comparative injury rule seems not to have found much footing in this State except where the public weal will likely substantially suffer if the injunction is granted, and where the result of such public injury is so great on the one hand as compared to the injury complained of on the other, then it would be unconscionable to grant injunctive relief, and it will be denied; (Johnson v. Railroad, supra) and certainly there can be no question in such circumstance when the party seeking injunctive relief has an adequate remedy at law. It is not the disparity in dollars and cents that furnishes a foundation for denying injunctive relief (Steinmetz v. Federal Lead Co., 176 S. W. (Mo.) 1049); but the immeasurable value of the health and comfort of the public on the one hand as compared to a few dollars on the other. It was such a condition at last mentioned of which the Supreme Court was speaking when it used the language above quoted to the effect that no chancellor under such circumstances would give injunctive relief when there was an adequate remedy at law. Such is the case at bar. Both sewers had been completed many years prior to the commencement of this cause, and the defendants merely *appropriated* that which they could have taken by condemnation, and the case does not, therefore, fall within that class of cases where property has been appropriated for private use. Analogous is the rule that ejectment will not lie against a railroad company that has appropriated right of way. In such case the Supreme Court in Improvement Company v. Railroad, 255 Mo. l. c. 525, 164 S. W. 515 said: "We think the court was right in holding that the plaintiff should have sued for the appropriation of the property, rather than for the property itself. Cases of this kind stand upon a little different footing from cases where pure individual rights are involved. The public service is a proper matter for consideration in a way. Public service by a common carrier might be brought to naught, if an individual could eject it from an eight-foot strip across its right of way, at a point along its

line midway between the two ends. Of course the supposed case is not exactly this case, but the legal principle which governs the one is the same which must be applied to the other. The courts have been very loath to allow ejectment in any case where the public service would be crippled by the act of ejectment. They do not put it upon the ground that the public service would be hampered, but they have been diligent in finding doctrines upon which the ends of the public good would be met, without injuring the substantial rights of the individual property owner.''

It was shown that Chat river is the only possible outlet for the sewer discharge in the case at bar, and that to discontinue this discharge would be disastrous to the health and comfort of the greater part of the inhabitants of a city with a population of 5000 or more.

If plaintiffs have any cause of action they have an ample and adequate remedy at law for any damages they may have sustained, and are therefore not entitled to invoke the arm of equity for redress of a grievance, when the law affords an adequate remedy. The judgment below was clearly for the right party, and is affirmed. *Sturgis, P. J.,* and *Farrington, J.,* concur.