## In re ALBERT WEBERS, Petitioner in Habeas Corpus; WILLIAM YOUNG et al., Respondents.

### Division One, September 16, 1918.

1. **HABEAS CORPUS: Not of Legislative Creation.** Relief from illegal imprisonment by *habeas corpus* is not the creature of any statute. The writ cannot be abrogated by the Legislature. The Constitution (Art. 2, sec. 26) provides that its privileges shall never be suspended. The Legislature has confined its action principally to facilitating the use of the writ, and the courts cooperate with it in extending these facilities.

2. ———: **Jurisdiction: Appeal.** The Supreme Court has no appellate jurisdiction in a *habeas corpus* proceeding, for an appeal does not lie in such a proceeding.

3. ———: ———: ———: **Constitutional Question.** Whether or not the statute under which a petitioner is imprisoned is constitutional, if he applies to a court of appeals for a writ of *habeas corpus* and that court proceeds to final action, whether by discharging him or remanding him to custody, that case is at an end. If not discharged, but is remanded to custody, his course, if he wishes the Supreme Court to determine the constitutionality of the statute and the consequent validity of his imprisonment under the statute, is to apply to that court for its writ. No way is provided, either by the Constitution or statutes, by which the Supreme Court can acquire jurisdiction in a *habeas corpus* proceeding otherwise than by the use of its own writ, directed to be issued either by itself or by one of its judges.

4. ———: ———: **Transfer from Court of Appeals to Supreme Court: Constitutional Question.** A court of appeals, having issued its

writ of *habeas corpus* on behalf of a prisoner who alleges he is being illegally deprived of his liberty, has no authority, when the constitutionality of the statute under which he is held is properly assailed, to transfer the case to the Supreme Court, on the ground that the constitutionality of said statute is involved. The Supreme Court cannot by transfer acquire jurisdiction in a *habeas corpus* case. [Rule announced in Moberly v. Lotter, 266 Mo. 457, criticized.]

Transferred from the St. Louis Court of Appeals. REMANDED (*without direction*).

*C. J. Anderson* for petitioner.

*Holland, Rutledge & Lashly* for respondents and intervenor.

BROWN, C.—This is a proceeding by petitioner for the purpose of obtaining his discharge from the custody of William Young, Chief of Police, and Robert M. Hanna, Captain of Police of the city of St. Louis, by whom he had been arrested in that city on July 17, 1817, upon a charge of having violated an ordinance of said city. The application was made to the St. Louis Court of Appeals. The charging part of the petition is as follows:

"To the Honorable Judges of the St. Louis Court of Appeals in and for the City of St. Louis, Missouri:

"Comes now Albert Webers and respectfully represents to this Honorable Court that he is unlawfully deprived of his liberty by William Young, Chief of Police of the city of St. Louis, Missouri, and Robert M. Hanna, Captain of Police in and for the Third Police District in and for the city of St. Louis, Missouri.

"Your said petitioner further states that he was arrested by a police officer in the city of St. Louis, Missouri, on the twenty-seventh day of July, 1917, and brought by said police officer to a jail known as the Soulard District Police Station, in the said city of St. Louis, Missouri; that the said police officer then and there charged and complained that your petitioner had violated some ordinance of the city of St. Louis, Mis-

souri; that your petitioner has demanded from the person in charge of said police station, a written copy of the charges so made by said police officer against your said petitioner, and that such copy has been refused.

"Your petitioner further states that, after said arrest, your petitioner tendered to the officer in charge of said police station a good and sufficient bond with a good and sufficient surety to insure the appearance of your said petitioner in the City Court No. 1 at such time or times as said cause may be set for hearing; that the said police officer or official whose name is unknown to your petitioner, acting on behalf of the said William Young, Chief of Police, and the said Robert M. Hanna, Captain of Police, as aforesaid, demanded of your petitioner the payment of the sum of fifty cents as a fee for the issuing and accepting of such bond; that your petitioner then and there refused to pay the said sum of fifty cents, or any other amount for the issuing of the said bond, and that your petitioner now remains in the custody of said William Young and said Robert M. Hanna, Chief of Police and Captain as aforesaid, although your said petitioner has tendered and still continues to tender a good and sufficient bond with a good and sufficient surety for his appearance to answer to such charge or any charge which may be placed against him.

"Your petitioner further states that said imprisonment is illegal, in this, to-wit:

"That neither the said Chief of Police, the said Captain of Police, nor any other official or person acting for or on the behalf of the said Chief of Police, the said Captain of Police, nor the said Police Department, had or has any legal right or authority whatsoever to exact such fee of fifty cents, or any other fee for acceptance of such bond."

On August 1, 1917, the respondents filed in the said court identical returns, that of respondent Young being as follows:

"Now comes William Young, Chief of Police of the city of St. Louis, and for his return to the writ of

*habeas corpus* served upon him on the 27th day of July, 1917, says that he is the duly appointed qualified and acting Chief of Police of the city of St. Louis; that on the 27th day of July, 1917, Albert Webers, petitioner herein, was arrested in the city of St. Louis and taken to the Third District Police Station, charged with having violated an ordinance of the city of St. Louis; that a short time after petitioner's arrival at said station a man, whose name is unknown to respondent, appeared in his behalf and presented a bond in the sum of $200 for the release of said Albert Webers, but the said Albert Webers, petitioner herein, failed and refused to pay to the officer in charge of said station the sum of fifty cents, as provided for by Section 3459 of the Revised Statutes of Missouri of 1909, as amended by the Session Acts of 1913, page 193, and which provides, in part as follows:

"'Section 3459.—*Fund, how created—police relief association.*—This fund shall be created in the following manner: . . . all percentages of rewards allowed to members of any police force under the regulations of its department, *together with a fee of fifty cents for each and every bond taken by any police officer for the appearance of any person charged with violating any city ordinance, which said officer is authorized then and there to collect*: Provided, however, that no more than one bond fee shall be taken for any arrest, regardless of the number of charges which may be placed against the person arrested, all of which moneys herein designated shall be paid to the treasurer of said relief association.'

"Respondent further states that he was ready and willing to release petitioner herein upon his giving a sufficient bond and complying with the statute above set forth, but that petitioner herein declined to pay over to the officer in charge of said station the sum of fifty cents as provided for by the aforementioned statute, and as a result of his failure to comply with the law petitioner was held in custody at said Third District Police Station until ordered by this Honorable Court

to produce him before it, which was done on the 27th day of July, 1917.

"Wherefore, respondent, William Young, having made this his return to the writ of *habeas corpus* heretofore issued, and having shown to this court that petitioner herein was not illegally and unlawfully deprived of his liberty, prays that said writ be quashed and that petitioner be remanded to the custody of respondent."

On October 4, 1917, they filed motions to dismiss the petition on the ground that the Court of Appeals had no jurisdiction because the case involved directly the construction of Article 4, Section 53, Clause 26; Article 4, Sections 46 and 47; and Article 10, Section 8, of the Constitution of Missouri; and is brought solely for the purpose of testing the constitutionality of Section 3459, Revised Statutes 1909.

The Court of Appeals being satisfied that the constitutionality of the section of the Revised Statutes of 1909 above referred to was involved in the case, transferred it to this court. The respondents have filed a plea to our jurisdiction on the ground that the Court of Appeals, by reason of the constitutional question involved, had no jurisdiction of the proceeding, and that this court took no jurisdiction by reason of the transfer.

This is a proceeding in *habeas corpus*. It was instituted by petition addressed to the judges of the St. Louis Court of Appeals, and presented to Judge REYNOLDS of that court in vacation, who issued the writ, and, upon its return, transferred the matter to the court, which set a day for the hearing. Upon that day the respondents filed in that court a motion to quash the writ and dismiss the proceeding on the ground that the Court of Appeals was without jurisdiction in the matter, because the proceeding was instituted to test the constitutionality of an act of the Legislature, and involved the construction of certain provisions of the Constitution of the State. The court thereupon transferred the matter to this court. The petition and return

are copied in the statement preceding this opinion, and will be referred to as necessary to a correct understanding of the questions presented. The fact that these questions stand upon the writ indicates the propriety if not the absolute necessity of noticing its nature as an element of their solution.

As has been said, and never questioned, "relief from illegal imprisonment by means of *habeas corpus* is not the creature of any statute, and the origin and history of the writ are lost in antiquity." [12 R. C. L. 1180.] It is truly said by the same author that "while the various purposes for which the writ may be used and the proceedings thereon have been to some extent regulated by ancient English statutes and by local legislative enactments, the writ cannot be abrogated by a Legislature." [Ibid.] It is founded in the broad principle that personal liberty, like life itself, can only be violated subject to the right to appropriate judicial inquiry. Our State Constitution (Sec. 26, Art. 2) recognizes its existence by providing that its privilege shall never be suspended. [Art. 2, sec. 26.]

The Legislature has confined its action principally to facilitating the use of the writ, so that wherever a judicial officer of a court of record may be found, its privilege is available. [R. S. 1909, sec. 2442.] This court has co-operated with the Legislature in extending these facilities. In State v. Millsaps, 69 Mo. 359, and later in State v. Wilson, 265 Mo. 1, it held that the judge of the probate court, a court of limited constitutional jurisdiction (Art. 6, sec. 24, Mo. Constitution), had jurisdiction in *habeas corpus* under the section of our statute above cited, and it follows that *the judges* of this court and of the courts of appeals have the same authority, derived from the same legislative source. [Lowe v. Summers, 69 Mo. App. 637.] Having obtained jurisdiction by the presentation of the petition and the issue of the writ, he may proceed to the determination of the right, regardless of the constitutional jurisdiction of his court, or the nature of the questions

of law or fact involved. The power of the Legislature to regulate the use of this extraordinary remedy is as broad as is the beneficent purpose for which it exists. Its only confines are found in the limitations imposed by the organic law.

We have stated these principles at some length because they constitute the foundation upon which our jurisdiction rests. The writ is the most highly remedial of all that we have inherited through generations of a liberty-loving people, and all constitutional and statutory provisions intended to give it effect must be read and judged in the light of its purpose.

The jurisdiction of this court, except in cases otherwise directed by the Constitution, is appellate only. Its appellate jurisdiction has no reference to *habeas corpus,* in which there lies no appeal. There is no way provided either by constitution or statute in which it can acquire jurisdiction in such a proceeding otherwise than the use of the writ by itself or one of its judges. The authority of the judge to issue and hear it is limited, as we have already noted, to the vacation of the court, and it follows that upon its meeting it is returned into the court, as was done in the instant case with the writ of Judge REYNOLDS of the Court of Appeals. Had the Court of Appeals proceeded to final action in this case whether by discharging the petitioner or remanding him to *custody,* it would have been at an end. No appeal or writ of error or other proceeding could have given this court juridiction *of that case.*

There is another branch of the constitutional jurisdiction of the Supreme Court which occurs to us in this particular connection. It has "superintending control over the courts of appeals by mandamus, prohibition and *certiorari.*" In other words, it may compel them to proceed to exercise their jurisdiction, to prevent them from exceeding that jurisdiction, and to ascertain whether they are within their jurisdiction. We have confined the last definition to the ancient office of the writ of *certiorari,* because of the careful withholding

of all appellate jurisdiction under whatever name it may be exercised. The Constitution permits and requires (Amendment of 1884, Section 6) that certain cases be certified to this court, but there is nothing in the provision that affects this case. It also authorizes (Id. sec. 3) the Legislature to provide for the transfer of cases from a court of appeals to the Supreme Court, and in pursuance of this authority Section 3938 was enacted, providing that "in the event of any case being sent improperly on appeal or writ of error from a lower court to either of the courts of appeal when the same should have been sent to the Supreme Court" it shall be transferred to the Supreme Court. We note with what care the Legislature has limited this provision to cases sent to the courts of appeal *on appeal or writ of error,* and withholds the power to transfer in any other cases. It has no application whatever to writs of *habeas corpus* sued out under the Habeas Corpus Act upon petition either to the Court of Appeals or to one of its judges.

We have carefully examined all the constitutional and statutory provisions to which our attention has been called, and some to which it has not, and they have all tended to strengthen our impression of the care which they exhibit to avoid any expression of an intention on the part of the people, speaking either through organic law or through legislation, to the effect that a proceeding of this character may be brought into this court by transfer from the Court of Appeals. It is unnecessary to consider in this connection our judgment in Moberly v. Lotter, 266 Mo. 457, in which a judgment of the Macon Circuit Court involving the title to land was brought on writ of error to the Kansas City Court of Appeals and transferred by that court to the Supreme Court. Our judgment was founded upon the reasonable theory that the writ of error performed an appellate office in a cause of which this court had appellate jurisdiction. The same principle applies to the case of State v. Nortoni, 201 Mo. 1, which was prohibition from

this court directed to the St. Louis Court of Appeals to prohibit it from proceeding by a similar writ to prevent the St. Louis Circuit Court from proceeding to adjudicate a cause appealable to this court. This class of cases have little relation to the question now before us. No appellate jurisdiction exists in *habeas corpus.* The act creates an emergency jurisdiction to facilitate the remedy through judicial agencies such as may be found convenient to petitioner. Had there been, in this case, no superior judge or court present in St. Louis, he could have resorted to the probate court in that city, which would then have had plenary jurisdiction, constitutional and otherwise, relating to his right. From its decision there would be no appeal, but should it refuse to grant the relief he might turn to a superior court or judge for another hearing.

This is in perfect harmony with the purpose of the act, which is intended to provide protection alike for the rich and poor. Under its terms, the person detained in a distant county could only resort to the high constitutional jurisdiction of this court by paying the traveling expenses, not only of himself but of his custodian, to the state capital, and he is compensated in some measure for this hardship by the permission to resort to any of the appropriate judicial agencies of the locality in which he may be wrongfully detained. It is our duty, whenever our authority is properly invoked, to serve the constitutional and legislative purpose, but this cannot be done in the exercise of our appellate jurisdiction.

It follows from the foregoing suggestions that, in our opinion, we have acquired no jurisdiction in this proceeding. It is true that in the Nelson case (251 Mo. 63), we accepted, *sub silentio,* jurisdiction in a similar case. No such question was raised, and it is indicated by a careful perusal of the record that this action was silently desired by all parties. We do not think it safe to give permanent effect to a practice so established. The important constitutional rights and principles involved in this case deserve at least some inquiry before

becoming incorporated into our jurisprudence. For that reason we make no suggestion with reference to the important question involved in the merits of the proceeding.

The record is remanded to the St. Louis Court of Appeals without direction. *Railey, C.,* concurs.

In the foregoing opinion of Brown, C., *Blair, J.,* concurs.

BLAIR, P. J. (concurring).—The Constitution (Sec. 12, Art. 6,) empowers the Court of Appeals to issue writs of *habeas corpus.* Section 5, Amendment of 1884 to Article 6, applies to appeals and writs of error only. The restrictions imposed by the sections mentioned do not apply in this case.

GRAVES, J. (concurring).—The code as to *habeas corpus* is a code unto itself. The applicant for this beneficient writ can go to as many courts as he can find, provided he takes them in gradation of authority. In other words, he can go from the lowest to the highest, commencing, of course, with the lowest. He does not go by an appeal, but by original right, and as an original case. Under this code the petitioner herein had a right to go to the St. Louis Court of Appeals, because by law such court has been given jurisdiction in such cases. If for any reason that court remanded him under the writ, he still had the right to come here, but this right was one by original application to this court, and not by certification from the Court of Appeals. There is no authority in law to certify in such cases. I concur thus separately because the opinion recognizes the rule in Moberly v. Lotter, 266 Mo. 457, and in that rule I do not concur, and will not concur until after this court again so says in a case wherein the same question is one at issue. The question there is not the question here, and there is, therefore, no call to approve the doctrine of the Moberly-Lotter case.

For this reason I concur in the result and in much of what is said in the opinion. *Bond, P. J.,* and *Woodson, J.,* concur in these views.